

IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON

DATE JAN 1 1 2019

CHIEF JUSTICE

This opinion was filed for record

at 8:00 a.m. on Jan 11, 2018

SUSAN L. CARLSON
SUPREME COURT CLERK

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

|  |  |  |
|---|---|---|
| MEGAN ROAKE, | ) | No. 93456-8 |
| Respondent, | ) | |
| v. | ) | En Banc |
| MAXWELL DELMAN, | ) | |
| Petitioner. | ) | Filed    JAN 1 1 2018 |

JOHNSON, J.—This case involves interpretation of chapter 7.90 RCW, the Sexual Assault Protection Order (SAPO) Act (SAPO Act). The statute establishes a special proceeding for a victim of sexual assault to obtain a civil protection order. The procedure for a SAPO is as follows: A victim of sexual assault files a petition with the court. RCW 7.90.040(1). Under the statute, the petition contains two requirements: (1) an allegation of "the existence of nonconsensual sexual conduct or nonconsensual sexual penetration" and (2) an affidavit "stating the specific statements or actions made at the same time of the sexual assault or subsequently thereafter, which give rise to a reasonable fear of future dangerous acts." RCW 7.90.020(1). Based on the filing of the petition, a temporary protection order may be granted. RCW 7.90.050. The statute authorizes the issuance of a temporary

order, ex parte, without prior notice to a respondent. RCW 7.90.110. The court must then order a full hearing to be held within 14 days. RCW 7.90.050.

In this case, the commissioner granted the petitioner's, Megan Roake's, temporary SAPO, and it was served. The respondent, Maxwell Delman, filed a motion to dismiss, challenging both the assertion of nonconsensual assault and the claim of reasonable fear of future dangerous conduct. At the later hearing, the trial court dismissed the petition, holding that Roake's petition was legally insufficient because the petition failed to allege a reasonable fear of future dangerous acts. Roake appealed the dismissal, and the Court of Appeals reversed and remanded. The Court of Appeals held that the final order statute, RCW 7.90.090, does not require proof of a reasonable fear of future dangerous acts. *Roake v. Delman*, 194 Wn. App. 442, 377 P.3d 258 (2016), *review granted*, 187 Wn.2d 1008, 386 P.3d 1098 (2017). It further held that the SAPO Act provides no basis for considering the validity of the temporary order in determining whether to grant a final protection order. We reverse. We hold that RCW 7.90.130(2)(e) provides the procedure and opportunity to contest the sufficiency and validity of the petition and temporary order, and that the trial court correctly held that Roake's petition was legally insufficient under RCW 7.90.020(1).

FACTS AND PROCEDURAL HISTORY

In May 2014, Roake and Delman, both freshmen at the University of Washington (UW), met at a party. After the party, Roake and Delman returned to Roake's dorm, where Roake alleges a sexual assault occurred.

In September 2014, when Roake returned to school for classes, she reported the incident to the Seattle Police Department (SPD). SPD investigated the claim, did not file charges, and closed the case. Roake then reported the incident to the university student conduct office, which issued a no contact order.[1] During the next several months, Roake occasionally saw Delman on campus and twice went to parties hosted by a student group she knew he belonged to. Delman never spoke to Roake, phoned her, or came to her residence hall or classes.

In January 2015, Roake petitioned for a SAPO, seeking to restrain Delman from having any contact with her at her residence or workplace or on the UW campus. In her petition, she alleged that Delman had committed an act of nonconsensual sexual conduct or nonconsensual sexual penetration. Roake asserted that she had encountered Delman several times on campus, that she did not know Delman prior to the night of the alleged sexual assault, and that she did "not know what he [was] capable of." Clerk's Papers (CP) at 4. The court granted an ex parte

---

[1] Delman complied with this order, which is not before us.

temporary protection order and scheduled a full hearing on whether to issue a final order for two weeks later.

The ex parte order was served on Delman, who responded by filing pleadings asserting that the sexual acts were consensual, and that since the incident eight months earlier, he had not tried to contact Roake and had complied with the university's protection order. Also, he argued that because the temporary order failed to specify the time or locations of Roake's classes or activities on campus, and because Roake had not provided that information, it was impossible for him to avoid inadvertent contact with her.

In response, Roake filed affidavits of friends who attested to her good character, repeated her statements about Delman's alleged assault and how it had affected her, and stated that they believed her. At the February 15, 2015, hearing, Roake began to testify, but because Delman had not received the declarations on which she was relying, the hearing was continued. Shortly before the next hearing date, Delman filed a motion to dismiss Roake's petition generally, and specifically under CR 12(c).[2] He filed declarations of his family and friends attesting to his good character and disputing Roake's claims of assault.

---

[2] "**Motion for Judgment on the Pleadings.** After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings. If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by rule 56." CR 12(c).

At the hearing, Delman challenged the ex parte temporary protection order arguing that it should not have issued because the petition and affidavits Roake submitted, and the transcript of the ex parte hearing, did not establish the existence of a reasonable fear of future dangerous acts, as the statute required, and that the petition should be dismissed. His attorney argued that Delman's 10 months of avoiding contact with Roake and complying with the university's no contact order made a final protection order unnecessary. Roake responded that her statement in her petition that she "did not know what Delman was capable of" was sufficient to demonstrate her reasonable fear of future dangerous acts under the act, and that she did not have to prove the existence of acts giving rise to reasonable fear of future dangerous acts to support issuance of a final SAPO. No other assertions or statements, threats, or subsequent actions by Delman were asserted.

The trial court granted the motion to dismiss, holding that the petition failed to establish Roake had any reasonable fear of future dangerous acts from Delman, and that on that same basis, the temporary order that was issued was invalid. The trial court entered an order of dismissal. Roake appealed the dismissal, and the Court of Appeals reversed.

The Court of Appeals, in its statutory interpretation analysis, determined that the SAPO petition has two elements: "(1) an allegation that a sexual assault occurred and (2) the specific statements or actions, *other than the assault itself,*

5

that cause the petitioner to reasonably fear future dangerous acts from the respondent." *Roake*, 194 Wn. App. at 450 (emphasis added). It noted that while Roake's petition failed to establish the reasonable fear element, any initial pleading requirements of a SAPO petition do not control the determination of whether to grant a final protection order. *Roake*, 194 Wn. App. at 456 ("[T]he SAPO Act provides no basis for considering the validity of the temporary order in determining whether to grant a final protection order.") It held that to obtain a final protection order under RCW 7.90.090, the petitioner is not required to prove the existence of statements or acts giving rise to a reasonable fear of future dangerous acts. The Court of Appeals noted the inconsistency in the statutes but dismissed this by focusing on the language of the final order statute, RCW 7.90.090, which, under that section's language (read in isolation from the petition statute, RCW 7.90.020), does not reference "a reasonable fear of future dangerous acts."[3] It also

---

[3] RCW 7.90.020(1) states, "A petition for relief shall allege the existence of nonconsensual sexual conduct or nonconsensual sexual penetration, and shall be accompanied by an affidavit made under oath stating the specific statements or actions made at the same time of the sexual assault or subsequently thereafter, which give rise to a reasonable fear of future dangerous acts, for which relief is sought. Petitioner and respondent shall disclose the existence of any other litigation or of any other restraining, protection, or no-contact orders between the parties."

held that procedurally, Delman's motion was not properly before the trial court.[4]

Delman then sought discretionary review, which we granted.

ANALYSIS

The Court of Appeals addressed three statutory issues: (1) if or when a respondent may challenge the validity of a petition or ex parte temporary order, (2) what a SAPO petition requires before a court issues an ex parte temporary order, and (3) what the final order statute requires before a court issues a final protection order.

Before resolving the statutory issues, it is necessary to understand the procedural posture under which the trial court based its order of dismissal. As noted earlier, this action was instituted when Roake filed a petition for a SAPO. Delman appeared and filed a motion to dismiss. The motion included a general request for dismissal and, more specifically, dismissal under CR 12(c). Both sides filed declarations, although nothing from the trial court's order indicates whether they were considered. In our review of the declarations, Roake does not assert that Delman violated the university's protection order. There are no allegations that threats, actions, or incidents occurred after the initial incident. The trial court, after reviewing the pleadings and perhaps considering the declarations to determine

---

[4] It held that the motion was not a CR 12 motion because it relied on matters outside the pleadings and it was not a motion for summary judgment because it was not "filed and served not later than 28 calendar days before the hearing." CR 56(c).

7

whether later incidents or facts were necessary to rule on the motion, dismissed the petition, providing in the denial order, "The petitioner failed to establish that she had any reasonable fear of future dangerous acts from the respondent and therefore the temporary order was invalid." CP at 98. That constitutes the basis of the trial court's decision.[5]

On appeal, the Court of Appeals held that the trial court's denial rested on an incorrect interpretation of the SAPO Act because the SAPO Act provides no basis for considering the validity of the temporary order. Roake and amicus Legal Voice argue that this is appropriate because the statutes are unambiguous, and because Delman had notice and the opportunity to be heard. We disagree.

Essentially, as Delman argues, a commissioner could enter a temporary order even where a petition fails to allege a statutorily required element, and no procedure exists for a respondent to challenge the deficiency in the petition because the requirements for the issuance of a final order differ from those needed initially. In the briefing before us, Delman argues that the Court of Appeals' interpretation implicates Delman's due process right to challenge a deficient SAPO petition.[6] *See* CONST. art. I, § 3.

---

[5] Because the trial court dismissed on this basis, it did not reach or resolve the issue raised concerning the claim of sexual assault, which the Court of Appeals remanded for resolution.

[6] Procedural due process imposes constraints on governmental decisions that deprive individuals of "'liberty'" or "'property.'" *Mathews v. Eldridge*, 424 U.S. 319, 332, 96 S. Ct. 893,

We disagree with the Court of Appeals that the SAPO Act provides no basis for considering the validity of the temporary order. If a respondent alleges a meritorious defense to the sufficiency of a temporary SAPO, under the statute he or she may petition the court to reopen the order under RCW 7.90.130, which states:

> (2) A sexual assault protection order shall further state the following:
>
> . . . .
>
> (e) For ex parte temporary sexual assault protection orders, that the respondent may petition the court, to reopen the order if he or she did not receive actual prior notice of the hearing and if the respondent alleges that he or she had a meritorious defense *to the order* or that the order or its remedy is not authorized by this chapter.

(Emphasis added.)

Here, Delman effectively did that by filing the motion to dismiss. Based on the motion, the trial court heard argument on the motion on the date the final hearing was scheduled. This was proper procedure established under RCW 7.90.130, which provides that a respondent may petition the court to reopen the ex

---

47 L. Ed. 2d 18 (1976). "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews*, 424 U.S. at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552, 85 S. Ct. 1187, 14 L. Ed. 2d 62 (1965)). "Due process is a flexible concept in which varying situations can demand differing levels of procedural protection." *Gourley v. Gourley*, 158 Wn.2d 460, 467, 145 P.3d 1185 (2006) (plurality opinion) (citing *Mathews*, 424 U.S. at 334). In evaluating the process due in a particular situation, we consider (1) the private interest impacted by the government action, (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards, and (3) the government interest, including the additional burden that added procedural safeguards would entail. *Mathews*, 424 U.S. at 335.

parte temporary order where the respondent alleges that he or she had a meritorious defense to the order. Delman argued that Roake's petition was legally insufficient, which is such meritorious defense.

Reviewing the trial court's denial order discloses the procedural posture supporting the decision. While the order reflects that the court hearing is pursuant to the petitioner's request, as mentioned, Delman had filed a motion to dismiss, asserting the allegations of the petition were legally insufficient. The trial court denial order expressly provided, "For a temporary sexual assault protection order, reasons for denial of the order are: The Petitioner failed to establish that she had any reasonable fear of future dangerous acts from the Respondent and therefore the temporary order was invalid." CP at 98.

Furthermore, although the denial order appears to be a preprinted form order, no indication appears on that order that the trial court considered testimony or other supplemental declarations in resolving any disputed facts, nor did the trial court enter any findings of fact as would typically be included to resolve disputed facts. The denial order can be characterized only as granting the motion to dismiss.

The Court of Appeals misunderstood the procedural posture and focused its analysis on RCW 7.90.090(1)(a), which establishes the requirements necessary for issuance of a final protection order. That statute provides:

> If the court finds by a preponderance of the evidence that the
> petitioner has been a victim of nonconsensual sexual conduct or

10

nonconsensual sexual penetration by the respondent, the court shall issue a sexual assault protection order; provided that the petitioner must also satisfy the requirements of RCW 7.90.110 for ex parte temporary orders or RCW 7.90.120 for final orders.

The Court of Appeals held that under this section, no express requirement exists that a petitioner establish (or reestablish) specific statements or actions that give rise to a reasonable fear of future dangerous acts. While this conclusion may be supportable, it misses the point. As established earlier, the trial court denial order in granting the motion to dismiss the petition did not reach or resolve any issues required for issuance of a final order.

Moreover, the statutory analysis, from a practical standpoint, will always focus on what issues are in dispute. Where, as here, a respondent brings a challenge to the sufficiency of the initial petition, either under RCW 7.90.130 or by way of a motion to dismiss as filed here, a trial court resolves that claim on the pleadings. In a different situation where a respondent disputes the claim of sexual assault, the trial court will conduct a further fact finding hearing and resolve that issue based on the testimony or evidence submitted. That further hearing will necessarily depend on how the issue is presented procedurally and what, if anything, is contested by a respondent, and will proceed to resolve the claims at issue.

*Roake v. Delman*, No. 93456-8

We reverse the Court of Appeals and reinstate the trial court's dismissal.

WE CONCUR:

No. 93456-8

GORDON McCLOUD, J. (concurring)—I agree with the lead opinion that RCW 7.90.020(1) requires a petitioner seeking a sexual assault protection order to allege and prove, with specific statements or actions, a reasonable fear of future dangerous acts by the alleged attacker. That statute makes such allegations and proof mandatory prerequisites to the issuance of a temporary protection order. I write separately to explain why that is so, and why that statute also makes such allegations and proof mandatory prerequisites to issuance of a final protection order.

## FACTUAL BACKGROUND

Megan Roake and Maxwell Delman, who were both students at the University of Washington (UW), met at a party on May 9, 2014, and exchanged phone numbers. Clerk's Papers (CP) at 4. Around 1:00 a.m. that night, Roake invited Delman to her dormitory, where they proceeded to a private bathroom. Roake and Delman agree that they engaged in consensual kissing, but they dispute whether subsequent sexual acts were consensual. Roake states that Delman digitally penetrated her, bit her and slammed her head into the wall during oral sex, attempted to penetrate her with his

1

penis, and disregarded her order to stop and her act of pushing him away. Roake states there was a significant amount of blood on the floor and on her clothing as a result.

After this single encounter between Roake and Delman, classes ended and Roake returned home for the summer. She and Delman had no further contact during this time. Roake did not report the event to campus authorities or to the police. Over the summer, Roake began attending counseling sessions, including EMDR (eye movement desensitization and reprocessing) therapy, several times per week. She asserts that EMDR therapy helped her recall the event.

In September 2014, Roake returned to campus for fall classes. At this point, she reported the May 9th incident to the Seattle Police Department. The police conducted a one-month investigation. As a result, they declined to prosecute. Roake then reported the incident to the UW's office of Community Standards and Student Conduct (CSSC). CP at 35-36. The CSSC began an investigation process into the May 2014 incident. Roake obtained a no-contact order against Delman from this campus office.

After the CSSC no-contact order issued, Roake occasionally saw Delman in passing on campus. According to declarations that Roake filed, she twice attended parties hosted by a student group that she knew Delman belonged to, and once she

2

chose not to leave when she saw him at that party. According to those same declarations, Roake stated that Delman did *not* attempt to contact her; instead, he acted like he did not recognize her. Both parties agree Delman has complied with the CSSC no-contact order. And it is also undisputed on this record that Roake's friends began following Delman to his own campus activities, not the other way around, and that at least once Roake's friend engaged Delman in a conversation at a party while Roake was present.

## PROCEDURAL HISTORY

On January 14, 2015, Roake filed a petition for a SAPO (sexual assault protection order) against Delman in connection with the May 2014 incident. CP at 1-5. Roake stated that she sought the SAPO because "I have reported the incident to UW authorities and a no[]-contact order was entered but since the holidays, I have encountered the respondent several times on campus. We also have mutual friends and can end up in the same places and similar areas on campus." CP at 4. Roake sought to restrain Delman from having any contact with her at her residence, at her workplace, or on the UW campus. In her petition, she stated that Delman had committed a single act of nonconsensual sexual conduct or nonconsensual sexual penetration. CP at 3. The petition—filed on a form—also contained the standard form language: that that act "g[a]ve rise to a reasonable fear of future dangerous

3

acts." *Id.* Roake then described the alleged assault itself as the specific conduct that caused her to fear Delman. Instead of describing "specific" facts that could support an allegation of reasonable fear of future harm (as RCW 7.90.020(1) requires), her statement, contained within the petition itself, stated that she knew Delman only from that night eight months earlier and that she did "*not* know what he was capable of." CP at 4 (emphasis added).

On January 14, 2015, a King County court commissioner issued an ex parte temporary SAPO restraining Delman from contacting Roake, and set a later date for a full hearing on the final order.

Delman did not receive notice of the ex parte temporary SAPO hearing and thus did not appear. Report of Proceedings (RP) (Jan. 14, 2015) at 4-11. He was served with the petition and temporary SAPO in the middle of a class the next day, January 15, 2015. CP at 12.

Delman then filed a response, stating that since the May 2014 incident eight months earlier, he had not attempted to contact Roake and he had fully complied with the CSSC no-contact order. He also sought clarification of Roake's campus schedule and activities, along with identities of their mutual friends, so that he could better comply with the temporary order, since that order did not specify the time or location of Roake's classes. Roake refused to provide this information. Delman

stated it was therefore impossible for him to avoid inadvertent contact with Roake. CP at 10. Delman also argued that Roake's claims were insufficient to support a final protection order. CP at 11.

Roake responded with material to support her petition for a final protection order. She filed declarations from several friends who attested to her good character, explained that Roake had a reputation for not allowing sexual activity "below [the] waist," relayed their eyewitness impressions of Roake (but not of the disputed acts) from the night of May 9, 2014, restated what Roake had told them about what happened on that night, gave their impressions of how the encounter appeared to affect Roake, and stated that they believed her. CP at 17. Some of the declarations also stated that Roake had recalled additional details about her encounter with Delman only after engaging in EMDR therapy, and that the therapy allowed Roake to understand the encounter with Delman had been a nonconsensual assault.

At the hearing on whether to issue the final SAPO order, on February 15, 2015, Delman's counsel realized that it had not received the declarations on which Roake was relying. The judge therefore granted his motion to continue the hearing five days, until February 20, 2015.

Delman then moved to dismiss. CP at 33-70. He argued that the petition failed to allege, and Roake failed to prove, what the statute requires: "specific

statements or actions made at the same time of the sexual assault or subsequently thereafter, which give rise to a reasonable fear of future dangerous acts, for which relief is sought." RCW 7.90.020(1); CP at 33-43. Delman pointed to the eight months that had passed since the initial encounter, during which time he had avoided contact with Roake and complied with the university's no-contact order, which he believed undercut Roake's claim of reasonable fear of future harm. CP at 42-43. Delman added that he was transferring to an out-of-state school and was moving at the end of the month which made Roake's fear of future harm even more unreasonable. CP at 43. Lastly, Delman argued that Roake's fear was unreasonable because the sexual acts were consensual. CP at 2. Delman filed several declarations from family, friends, and others, attesting to his good character and reliability. CP at 44-68. Delman challenged Roake's recalled memories of nonconsent as not credible because they were retrieved through questionable EMDR therapy. CP at 40-41. For these reasons, Delman argued that the ex parte temporary order should not have been issued and that a final protective order should not be issued in its place because Roake's petition, attached affidavit, and transcript of the ex parte hearing all failed to establish "reasonable fear" of dangerousness, as required by the SAPO statute.

Roake responded that the assault alone, coupled with her fear of Delman based on her not knowing him, not knowing what he was capable of, and knowing they went to the same school and periodically inadvertently crossed paths was sufficient to establish a reasonable fear of dangerous acts. RP (Feb. 20, 2015) at 65-66. She argued that the SAPO statute did not require her to prove the existence of additional acts giving rise to a reasonable fear of future dangerous acts to support the final SAPO.

The trial court agreed with Delman that Roake had to allege and prove a reasonable fear of future dangerous acts. It found that Roake did not present "statements or actions . . . which give rise to a reasonable fear of future dangerous acts" as RCW 7.90.020(1) required, and granted Delman's motion to dismiss without holding a full factual hearing on the request for a final protection order. *Id.* at 78-79. It denied Roake's petition and terminated the temporary SAPO.[1] *Id.*; CP at 97-99.

The Court of Appeals reversed. *Roake v. Delman*, 194 Wn. App. 442, 377 P.3d 258, *review granted*, 187 Wn.2d 1008, 386 P.3d 1098 (2017). It ruled that the SAPO statute required Roake to allege both a sexual assault and "specific statements

---

[1] The trial court dismissed Roake's petition before the burden shifted to Delman to argue against the sexual assault allegation. The briefs therefore emphasize the "reasonable fear" requirement rather than Delman's refutation of the sexual assault allegation.

or actions" giving rise to a "reasonable fear of future dangerous acts." But it also

held that that the SAPO statute did not require Roake to actually prove those latter

allegations; she had to only allege them. *Id.* at 451-52. That court also held that the

trial court lacked the authority to dismiss Roake's petition as a matter of law because

the parties had submitted declarations on Delman's motion to dismiss and the judge

failed to exclude other extrinsic documents from its consideration, thus converting

his CR 12(c) motion into a CR 56 motion for summary judgment, which was not

permitted in this context. *Id.* at 455-56.

## ANALYSIS

I.     RCW 7.90.020(1) Requires a Petitioner Seeking a Temporary or Final
       SAPO To Allege and Prove a Reasonable Fear of Future Dangerous
       Acts by the Alleged Attacker

   *A. The Language of the Statute Creating the SAPO Remedy Requires
       an Allegation of Reasonable Fear of Future Dangerous Acts*

The SAPO statute requires a petitioner to allege the existence of both (1) a

sexual assault and (2) "specific statements or actions . . . which give rise to a

reasonable fear of future dangerous acts." RCW 7.90.020(1). This is clear from

RCW 7.90.020(1), which states in part:

> A petition or relief shall allege the existence of nonconsensual sexual
> conduct or nonconsensual sexual penetration, and shall be accompanied
> by an affidavit made under oath stating the specific statements or
> actions made at the same time of the sexual assault or subsequently

8

thereafter, which give rise to a reasonable fear of future dangerous acts, for which relief is sought.

RCW 7.90.020 appears at the beginning of the chapter devoted to SAPOs, ch. 7.90 RCW. It is not a section that applies only to ex parte temporary restraining orders; it is the section that defines the action and hence applies to both temporary and final orders. And in defining the action, RCW 7.90.020(1) contains both the sexual assault prerequisite and the future dangerous acts prerequisite. It explicitly applies to any "petition for a sexual assault protection order," which includes both temporary and final SAPOs. RCW 7.90.020.

To be sure, the SAPO chapter's other subsections—particularly RCW 7.90.090—create some confusion. The reason is that despite the unambiguous language of RCW 7.90.020 requiring such proof, another portion of the SAPO chapter, RCW 7.90.090, discussing the proof needed to obtain a temporary or final protection order lacks the language about "specific statements or actions . . . which give rise to a reasonable fear of future dangerous acts."

But other language in RCW 7.90.090(1)(a) cross-references that "future danger[ousness]" requirement. RCW 7.90.090(1)(a) provides:

> If the court finds by a preponderance of the evidence that the petitioner has been a victim of nonconsensual sexual conduct or nonconsensual sexual penetration by the respondent, the court shall issue a sexual assault protection order; provided that the petitioner *must also satisfy*

9

> *the requirements of RCW 7.90.110 for ex parte temporary orders and RCW 7.90.120 for final orders.* [2]

(Emphasis added.) The cross-referenced statute, RCW 7.90.110(1), states:

> An ex parte temporary sexual assault protection order shall issue if the petitioner satisfies the requirements of this subsection by a preponderance of the evidence. The petition shall establish that:
>
> (a) The petitioner has been a victim of nonconsensual sexual conduct or nonconsensual sexual penetration by the respondent; and
>
> (b) There is *good cause to grant the remedy, regardless of the lack of prior service of process or of notice upon the respondent, because the harm which that remedy is intended to prevent would be likely to occur* if the respondent were given any prior notice, or greater notice than was actually given, of the petitioner's efforts to obtain judicial relief.

(Emphasis added.)

That cross-reference to RCW 7.90.110(1) clarifies that the "petition" must "establish" a reasonable fear of future dangerous acts to obtain a SAPO. Specifically, RCW 7.90.110(1) contains two prerequisites to issuance of a SAPO, just as RCW 7.90.020, creating the cause of action, does. The first prerequisite, in RCW 7.90.110(1)(a), is a sexual assault. But the second prerequisite, in subsection (b), is "good cause" to take the drastic step of issuing an ex parte order without notice to the respondent because "the harm which that remedy is intended to prevent would

---

[2] The cross-referenced statute, RCW 7.90.120, provides no separate or additional requirements, it just guarantees a "full hearing" with respondent present absent circumstances not applicable here. RCW 7.90.120(1)(a).

10

be likely to occur" if prior notice were given. What is the "harm . . . that remedy is intended to prevent"? It must certainly be the harm identified in RCW 7.90.020(1) defining the cause of action, that is, "*future* dangerous acts" that the complainant "*reasonabl[y]* fear[s]." (Emphasis added.)

I say that for five reasons, discussed *infra*.

### B. The Language of the Temporary SAPO Statute Specifically Cross-References the Statute Creating the SAPO Remedy with Its Prerequisites to Relief

First, as noted above, the language "harm . . . that remedy is intended to prevent," RCW 7.90.110(1)(b), must be a cross-reference to something. And the most logical harm for it to cross-reference is the harm specifically identified in RCW 7.90.020, the statute creating and defining the SAPO claim. It would make no sense for the harm referenced to be a broad, general statement intended to capture all the harm identified in the legislative history, rather than the harm the statute specifically captures and the judge must specifically determine.

### C. The Legislature Declared Its Intent That SAPO Is To Protect against Future Harms, Not Remedy Past Ones

Second, the harm described in the legislative declaration beginning this chapter is another reason. RCW 7.90.005. Because the "fundamental objective of statutory construction is to ascertain and to carry out the Legislature's intent," the "preamble or statement of intent can be crucial to interpretation of a statute." *Towle*

11

*v. Dep't of Fish & Wildlife*, 94 Wn. App. 196, 207, 971 P.2d 591 (1999). The

legislative declaration in RCW 7.90.005 states:

> Sexual assault is the most heinous crime against another person short of murder. Sexual assault inflicts humiliation, degradation, and terror on victims. According to the FBI [Federal Bureau of Investigation], a woman is raped every six minutes in the United States. Rape is recognized as the most underreported crime; estimates suggest that only one in seven rapes is reported to authorities. Victims who do not report the crime still desire *safety and protection from future interactions* with the offender. Some cases in which the rape is reported are not prosecuted. In these situations, the victim should be able to seek a *civil remedy requiring that the offender stay away from the victim.* It is the intent of the legislature that the sexual assault protection order created by this chapter be *a remedy* for victims who do not qualify for a domestic violence order of protection.

(Emphasis added.) This RCW 7.90.005 shows a legislative intent to prevent future

harm to petitioners who need that "protection," not to provide compensation or

impose punishment for past acts. This analysis is supported by RCW 7.90.090(5),

which provides that "[m]onetary damages are not recoverable as a remedy."

### D. *The Statutory Language Requiring "Reasonable Fear of Future Dangerous Acts" Was Specifically Added by Amendment*

Third, as Delman notes, "[T]he Legislature rejected the version of the SAPO

Act initially proposed by amicus [Legal Voice], which lacked the language requiring

a reasonable fear of future dangerous acts. *Compare* [SUBSTITUTE H.B.] 2576 § 5[,

59th Leg., Reg. Sess.] ([Wash.] 2006), *with* Laws of 2006, ch. 138 § 5." Resp't's

12

Answer to Amicus Curiae Br. at 8; Pet. for Review at 18-19. This prior proposed but rejected version of the statute required only an allegation of a sexual assault and "the specific facts and circumstances from which relief is sought." H.B. 2576, at 3-4, 59th Leg., Reg. Sess. (Wash. 2006).

The legislature must have added the "reasonable fear" language for a reason. The clearest reason is to limit prospective relief for sexual assault victims to cases where there is a real need to prevent future interaction with a respondent who poses a demonstrable likelihood of danger—not to allow prospective relief *of the sort offered by this injunctive-type remedy* any time a sexual assault is alleged and proved. *See* S.B. REP. ON SUBSTITUTE H.B. 2576, at 2, 59th Leg., Reg. Sess. (Wash. 2006) ("The amended bill requires that the petitioner for a sexual assault protection order must set forth, in the affidavit, the statements or actions made that gave rise to a reasonable fear of future dangerous acts, for which the order is sought."); *accord* Pet. for Review at 17-18; Resp't's Answer to Amicus Curiae Br. at 8-12.

### E. The Statutory Requirement of Future Harm Is Unique among Protection Order Statutes

Fourth, this additional future harm requirement is unique. The SAPO statute is the only Washington protective order statute that requires it. *Compare* RCW 7.90.020(1), *with* RCW 26.50.030(1) (domestic violence protection order petition must "allege the existence of domestic violence, and shall be accompanied by an

13

affidavit made under oath stating the specific facts and circumstances from which relief is sought"), *and* RCW 7.92.050(1) (stalking protection order petition shall "alleg[e] that the person has been the victim of stalking conduct committed by the respondent"), *and* RCW 10.14.040(1) (petition for antiharassment protection order shall "allege the existence of harassment and shall be accompanied by an affidavit made under oath stating the specific facts and circumstances from which relief is sought").

The legislature thus clearly knows how to relieve a petitioner from the burden of showing future dangerousness by specific statements or acts. But in this statute, it did not relieve the petitioner of that burden—it placed that burden squarely on the petitioner. This difference between the SAPO petition requirements and other protection order petition requirements indicates an intent that SAPO petitioners make an additional showing beyond an assault itself to obtain relief.

### F. It Is Absurd To Interpret the SAPO Language To Require Allegation of an Element of Future Harm That Need Not Ever Be Proved

Fifth, Roake's argument—adopted by the dissent—interprets the SAPO statute to require an allegation of reasonable fear that need not ever be proved. Dissent at 1. That is an absurd interpretation. I can think of no other claim where the petitioner must allege the required grounds for relief, but need not ever prove them. This court will avoid an absurd result even if it must disregard unambiguous

14

statutory language to do so. *State v. McDougal*, 120 Wn.2d 334, 351-52, 841 P.2d 1232 (1992). In this case, we don't have to ignore anything to avoid an absurd result. All we need to do is adhere to the plain language of RCW 7.90.020(1), which creates the SAPO claim and sets forth its prerequisites. It establishes two prerequisites. One is the existence of a sexual assault. But the other is specific proof that petitioner reasonably fears future dangerous acts by the alleged attacker.[3]

### G. *Conclusion as to Allegations and Proof Needed To Obtain All SAPOs*

I therefore concur in the lead opinion's holding that a petitioner seeking a SAPO must allege and prove both a sexual assault and a reasonable fear of future dangerous acts, *through specific acts or statements*, and not just allege or prove the assault itself. And I agree with the lead opinion that Roake's petition lacks such specific statements or actions supporting a reasonable fear of such future dangerousness.[4]

---

[3] Any other interpretation also risks violating due process clause protections, as the lead opinion acknowledges. CONST. art. I, § 12.

[4] Roake filed her petition on a standard court form that instructs her to "describe" the sexual assault that gave rise to her fear. CP at 3. But that form does not instruct her to describe what the statute requires, i.e., the "specific statements or actions" that give rise to not just a general fear, but "a reasonable fear of future dangerous acts" by the attacker. RCW 7.90.020(1). The lack of clarity in the form is probably a reflection of the lack of clarity in the statute. RCW 7.90.020 makes both the existence of a sexual assault and the existence of a reasonable fear of future dangerous acts prerequisites to SAPO relief. But as discussed above, it is not completely clear about what must be alleged, and what must be proved, to

I note, however, that the lead opinion limits its holding to temporary SAPOs. Lead opinion at 11. As the discussion above shows, however, the portion of the SAPO act establishing these prerequisites to relief covers all SAPOs, not just temporary ones. Ch. 7.90 RCW. It covers final SAPOs also. It is therefore impossible to conclude, as the Court of Appeals did, that this statutory scheme relieves the petitioner of the burden of actually proving these mandatory prerequisites to SAPO relief to obtain a final SAPO.

II.    Roake Failed To Establish That She Is Entitled to a SAPO

In her petition for a SAPO, Roake alleged no acts or statements separate from the sexual assault itself. The proof she presented was a written statement in the petition itself. That statement contains details about the alleged sexual assault. It shows that that alleged assault occurred eight months earlier. It shows no threats or purposeful contact by Delman since then. Instead, it indicates that such purposeful conduct likely did not occur, even though it easily could have. CP at 4 ("We also have mutual friends and can end up in same places and similar areas of campus."). The petition lacks the statutorily required "specific statements or actions" that caused petitioner "reasonable" fear of not just happenstance meetings, but of "future

---

obtain each type of SAPO. I believe that the legislature requires petitioners to prove both the assault and the reasonable fear of future dangerous acts to obtain any type of SAPO, and that the form should clearly state that.

16

dangerous acts." RCW 7.90.020(1). In fact, the petition's statement says that she did not know anything about what Delman might do in the future.

Roake's petition therefore lacks the mandatory prerequisite to SAPO relief of "specific statements or actions" constituting "reasonable" fear of "future dangerous acts." For that reason, she was not entitled to either a temporary or final SAPO.[5]

## CONCLUSION

I would hold that RCW 7.90.020 requires a SAPO petitioner to allege and prove not just a sexual assault, but also reasonable fear of future dangerous acts, through specific statements or acts separate from the acts inherent in an assault, to prevail. I would hold that these requirements apply to all SAPOs, temporary and final.

I therefore concur.

---

[5] The lead opinion like the trial court, assumes that issuance of a temporary SAPO is a prerequisite to issuance of a final SAPO. Lead opinion at 11. The dissent does not explicitly address that issue (because it finds the petition sufficient) but seems to assume that issuance of a temporary SAPO is not a prerequisite to issuance of a final SAPO. Dissent at 5. I would not reach that issue because I find the petition fails to satisfy the statutory prerequisites to both temporary and final SAPOs.

McCloud, J.

Fairhurst, C.J.

*Roake (Megan) v. Delman (Maxwell)*

No. 93456-8

STEPHENS, J. (dissenting)—Contrary to the lead opinion's interpretation, RCW 7.90.020(1) does not require a petitioner seeking a sexual assault protection order to explicitly allege or prove a fear of future dangerous acts by the alleged attacker. Instead, it includes an affidavit requirement to assure that any allegation of sexual assault is supported with substantive details. *Id.* (directing petitioners to include "specific statements or actions," including any acts or words "which give rise to a reasonable fear"). The lead opinion's interpretation transforms the modifying phrase "which give rise" into an additional "statutorily required element." Lead opinion at 8. In doing so, it creates unnecessary confusion as to the requirements for temporary and permanent protection orders and ignores the reality

that experiencing a sexual assault is itself a reasonable basis for ongoing fear. I respectfully dissent.

The purpose of the Sexual Assault Protection Order (SAPO) Act (SAPO Act), chapter 7.90 RCW, is to provide a straightforward and accessible civil remedy for sexual assault survivors. The SAPO Act recognizes that while sexual assault is "the most heinous crime against another person short of murder," it often goes unpunished. RCW 7.90.005. Rape is among the most underreported crimes and, even when reported, not always prosecuted. *See id.* When a rape occurs but is not prosecuted, a civil protection order is often the only remedy available to a survivor. However, a survivor whose assault stems from a single encounter with the perpetrator, outside the context of an ongoing relationship, may not qualify for existing protection orders. *See, e.g.*, RCW 26.050.010(2)-(3), (6) (restricting domestic violence protection orders to those "in a dating relationship" or "household members" with the perpetrator); RCW 7.92.020(3), .030(1)(c) (requiring stalking protection order petitioners to allege a pattern of stalking conduct, rather than an isolated incident). The SAPO fills this gap.[1]

---

[1] "It is the intent of the legislature that the sexual assault protection order created by this chapter be a remedy for victims who do not qualify for a domestic violence order of protection." RCW 7.90.005.

The SAPO's role is clear: to protect survivors who report sexual assaults. Specifically, "the victim should be able to seek a civil remedy requiring that the offender stay away from the victim." RCW 7.90.005. To achieve this purpose, the SAPO petition process must be straightforward and accessible to survivors, many of whom seek judicial relief without legal assistance. *See, e.g.*, RCW 7.90.180 (requiring the development of instructional brochures and a standard SAPO petition form); Br. of Amicus Curiae Legal Voice at 15 (noting that the majority of SAPO petitioners are pro se). To obtain a SAPO, the petitioner (1) must submit a petition alleging that a sexual assault occurred that is supported by (2) a sworn affidavit detailing the defendant's "specific statements or actions," and (3) appear at a hearing. *See* RCW 7.90.020(1), .050.

RCW 7.90.020(1) details the petition and affidavit requirements:

> A petition for relief shall allege the existence of nonconsensual sexual conduct or nonconsensual sexual penetration, and shall be accompanied by an affidavit made under oath stating the specific statements or actions made at the same time of the sexual assault or subsequently thereafter, which give rise to a reasonable fear of future dangerous acts, for which relief is sought. Petitioner and respondent shall disclose the existence of any other litigation or of any other restraining, protection, or no-contact orders between the parties.

A SAPO petition is legally sufficient if the petitioner (1) alleges that "nonconsensual sexual conduct or nonconsensual sexual penetration" occurred and (2) supports this allegation with a sworn affidavit detailing the assault. RCW 7.90.020(1). These

streamlined requirements are in keeping with the Legislature's intent to make the SAPO process accessible.[2] Nevertheless, the SAPO Act balances the interests of petitioners and respondents. Based on the petition alone, RCW 7.90.110(1) authorizes the court to grant immediate relief in the form of an ex parte temporary protection order (TPO)—but a final SAPO requires notice and a hearing. RCW 7.90.050, .120(1)(a) (requiring a hearing no later than 14 days after issuance of a TPO).

Following the hearing, RCW 7.90.090 authorizes the court to grant a final SAPO. RCW 7.90.090(1)(a) states:

> If the court finds by a preponderance of the evidence that the petitioner has been a victim of nonconsensual sexual conduct or nonconsensual sexual penetration by the respondent, the court shall issue a sexual assault protection order; provided that the petitioner must also satisfy the requirements of RCW 7.90.110 for ex parte temporary orders or RCW 7.90.120 for final orders.

*See also* RCW 7.90.120 (detailing hearing notice requirements and SAPO duration guidelines). Thus, a final SAPO is based on a single substantive finding: that the respondent more likely than not sexually assaulted the petitioner. As the Court of Appeals correctly noted, the burden of proof at the final order stage is distinct from

---

[2] Although RCW 7.90.020(1) separately lists the petition and affidavit requirements, Washington courts have further streamlined the petition process by combining both into a single, standardized form. *See* Wash. Courts, Petition for Sexual Assault Protection Order, Form SA 1.015 (June 2014), http://www.courts.wa.gov/forms/?fa=forms.contribute &formID=65 [https://perma. cc/LM2C-DT2K].

the procedural requirements associated with filing a SAPO petition. *See Roake v. Delman,* 194 Wn. App. 442, 451, 377 P.3d 258 (2016) ("Notably, RCW 7.90.090 does not require that a petitioner prove each of the allegations that must be included in a SAPO petition."), *review granted,* 187 Wn.2d 1008 (2017). With the opportunity to consider evidence and testimony from both the petitioner and respondent, at the hearing and final order stage the court is appropriately focused on the single essential finding: whether a sexual assault occurred.

In this case, the trial court dismissed Roake's petition without determining whether she was assaulted by Delman. Clerk's Papers (CP) at 98. Roake submitted her initial petition, described her alleged sexual assault, and was granted a TPO. *Id.* at 1-8. Before the court could conduct a full SAPO hearing, Delman moved to dismiss. *Id.* at 33. Delman argued that Roake's petition and the initial TPO were legally deficient because RCW 7.90.020(1) requires petitioners to allege sexual assault and separately demonstrate their reasonable fear of future dangerous acts. *Id.* at 42. The trial court granted Delman's motion, stating that Roake "failed to establish that she had any reasonable fear of future dangerous acts from the Respondent and therefore the temporary order was invalid." *Id.* at 98. The Court of Appeals and a plurality of this court similarly read RCW 7.90.020(1) as requiring

SAPO petitions to separately allege both sexual assault and reasonable fear. *See Roake,* 194 Wn. App. at 453; lead opinion at 1, 8. They are mistaken.

RCW 7.90.020(1) states that a SAPO petition "shall be accompanied by an affidavit made under oath stating the specific statements or actions made at the same time of the sexual assault or subsequently thereafter, which give rise to a reasonable fear of future dangerous acts." The Court of Appeals and the lead opinion read this language as requiring separate allegations of (1) sexual assault and (2) reasonable fear. *See Roake,* 194 Wn. App. at 453; lead opinion at 8. This conclusion is incorrect for two reasons. First, the statutory text does not require a petition to restate the obvious—that the petitioner is reasonably afraid of the attacker in light of the alleged sexual assault.[3] Second, even if RCW 7.90.020(1) required such an allegation, it may be satisfied by describing "statements or actions" associated with the underlying sexual assault.[4]

---

[3] The SAPO Act's first paragraph sets forth the Legislative declaration that "[s]exual assault inflicts humiliation, degradation, and *terror* on victims." RCW 7.90.005 (emphasis added). Because the SAPO Act recognizes that fear is a by-product of sexual assault, a SAPO petitioner whose affidavit describes his or her assault necessarily describes the "specific statements or actions . . . which give rise to a reasonable fear." RCW 7.90.020(1).

[4] This interpretation is consistent with SAPO instructions listed on the Washington Courts' website, which focus on the importance of describing the assault in detail. *See* Wash. Courts, Instructions for Petition for Sexual Assault Protection Order, Form SAi-1.015, at 3 (June 2010) ("Describe any nonconsensual sexual conduct . . . . The more details you can provide, the more helpful it is to the judge."), http://www.courts.wa. gov/forms/?fa=forms.contribute&formID=65 [https://perma. cc/MD63-YGAJ]. The instructions give three examples, each focused on improving a petition by adding

Nothing in RCW 7.90.020(1) requires an allegation of reasonable fear of future dangerous acts as a separate statutory element. Instead, a careful reading of the SAPO Act's operative language confirms that a legally sufficient petition needs only two components: (1) an allegation of sexual assault accompanied by (2) a sworn affidavit describing the defendant's "specific statements or actions." RCW 7.90.020(1). Among the statements or actions petitioners should include are any "which give rise to" reasonable fear of future harm. *Id.* The reasonable fear language, in context, is an explanatory phrase modifying the "specific statements or actions" that shall be alleged. It is not a separate substantive requirement. As a modifying phrase, it relates back to the affidavit requirement, providing guidance as to the kinds of "specific statements or actions" the petition must include. *Id.*

Interpreting RCW 7.90.020(1)'s reasonable fear language as providing guidance to petitioners makes sense in the SAPO Act's procedural context. Although a final SAPO requires notice and a hearing, courts determining whether to grant an ex parte TPO must rely primarily on the SAPO petition and accompanying affidavit. *See, e.g.*, RCW 7.90.110(1). A robust petition thus serves the interest of both petitioners and the courts. Such a petition is more credible, making it, from the petitioner's perspective, more likely to succeed; it also provides a factual basis for

---

descriptive detail about the assault. *Id.* at 4. None of the examples mention separate allegations of "reasonable fear." *Id.*

the court to corroborate key facts and assess the consistency of any allegations. Requiring the formality of a sworn affidavit further communicates the seriousness of the proceeding to the petitioner, potentially protecting respondents against frivolous accusations.

Perplexingly, the Court of Appeals acknowledged that "a survivor may reasonably fear the person who assaulted her based on the assault alone" yet interpreted RCW 7.90.020 as requiring the petitioner to cite "specific statements or actions, *other than the assault itself*, that cause the petitioner to reasonably fear future dangerous acts from the respondent." *Roake,* 194 Wn. App. at 449-50. Understandably, the court cited no statutory language in support of the italicized text, which appears to be in tension with the legislative declaration in RCW 7.90.005, discussed *supra*.[5] Indeed, this approach invites absurd results: if the assault itself cannot form the basis of a required showing, any petition based on a single assault by an unknown assailant would be legally insufficient, though this is exactly the type of assault the SAPO Act is meant to address. *See* RCW 7.90.005 (SAPOs are intended to "be a remedy for victims who do not qualify for a domestic violence order of protection").

---

[5] The Court of Appeals instead expressed concern that any other interpretation would render RCW 7.90.020(1)'s "specific statements and actions" language redundant. *See Roake,* 194 Wn. App. at 449. As discussed, this language is not redundant because it ensures SAPO petitions include details corroborating the sexual assault allegation.

Based on the record and the plain language of RCW 7.90.020(1), I would hold that Roake's SAPO petition was legally sufficient. Using the provided petition and affidavit form, she alleged nonconsensual sexual conduct and penetration perpetrated by Delman. *See* RCW 7.90.020(1); CP at 4. She also certified under penalty of perjury that her allegations were true and correct, satisfying the affidavit's "under oath" requirement. RCW 7.90.020(1). Finally, Roake described Delman's "specific statements or actions made at the same time of the sexual assault," *id.*, alleging that Delman forced his penis into her mouth, forced his fingers and tongue into her vagina, and bit her genitals. CP at 4. With these two elements—an allegation of sexual assault and a signed declaration containing corroborating details—Roake's SAPO petition was legally sufficient. *See* RCW 7.90.020(1). The SAPO Act, at least at the petition stage, requires no more.[6]

Finding a SAPO petition to be legally sufficient does not guarantee that a petitioner will receive a permanent protection order. At the hearing, the petitioner must prove "by a preponderance of the evidence that the petitioner has been a victim of nonconsensual sexual conduct or nonconsensual sexual penetration by the

---

[6] Even if RCW 7.90.020(1) required Roake to demonstrate reasonable fear, a fair reading of the record shows she has done so. Roake's petition describes her assault in graphic detail, alleging that forced penetration and biting of her genitals left her underwear and skirt "soaked in blood" and a pool of blood "about the size of a basketball hoop" under the sink. CP at 4. It is absurd to suggest that Roake needs to allege anything further before her fear of Delman can be considered "reasonable."

respondent." RCW 7.90.090(1)(a). Roake's allegations, if substantiated, seem to support issuance of a SAPO. *Id.*; CP at 4. However, making such a finding is properly the realm of the trial court.[7]

I would resolve only the question squarely before us and hold that the trial court erred by rejecting Roake's petition for "fail[ing] to establish that she had any reasonable fear of future dangerous acts from the Respondent." CP at 98. RCW 7.90.020(1) places no such burden on a petitioner, requiring only that a SAPO petition allege that a sexual assault occurred and include specific details in the accompanying affidavit describing what happened. Under a proper interpretation of the statute's requirements, Roake's SAPO petition was legally sufficient.

## CONCLUSION

I would affirm the Court of Appeals in result only, reversing the trial court's improper dismissal of Roake's petition and remanding the case for fact-finding under RCW 7.90.090.

---

[7] As the lead opinion recognizes, it appears the trial court dismissed Roake's petition before it "considered testimony or other supplemental declarations in resolving any disputed facts, nor did the trial court enter any findings of fact." Lead opinion at 10.

Stephens, J.

Gonzalez, J.

No. 93456-8

GONZÁLEZ, J. (concurring in dissent)—I share the concerns raised in Justice Stephens's dissent. This case should be remanded for further proceedings. Further, this case is our first opportunity to opine on the requirements of a sexual assault protection order (SAPO) petition and I fear the primarily procedural conclusions reached by the lead opinion may cause serious consequences for future SAPO petitions. I therefore agree with the dissent.

Megan Roake made allegations in her SAPO petition about her fear of Maxwell Delman, allegations that if proved true would entitle her to relief. Roake alleges that Delman forced her to perform sexual acts. Clerk's Papers (CP) at 4 (Roake's graphic description of the sexual assault). Her petition says that both of them are students at the University of Washington (UW) and, despite a university no contact order, she "encountered [Delman] several times on campus" and said she does "not know what he is capable of." *Id.* The lead opinion, without explanation, agrees with the trial court that Roake "failed to establish that she had any reasonable fear of future dangerous acts" by Delman, *id.* at 98-99 (Denial

1

*Roake v. Delman*, No. 93456-8 (González, J., concurring in dissent)

Order); lead opinion at 8, 10. And it is unclear what standard the lead opinion applies to arrive at this conclusion when there was no hearing on a final order in which Roake could prove her allegations are true. *See Rodriguez v. Zavala*, 188 Wn.2d 586, 598, 398 P.3d 1071 (2017) (reviewing decision to deny a protection order after hearing for an abuse of discretion).

The lead opinion holds that no hearing on the final order was required in this case because "a trial court resolves [the] claim on the pleadings." Lead opinion at 10. But, notably, the lead opinion fails to address the merits of Delman's motion to dismiss Roake's SAPO petition under CR 12(c) (motion for judgment on the pleadings).[1] *See id.* at 4. Instead, the lead opinion says that legal insufficiency is a ground to dismiss a SAPO, but fails to discuss why the facts alleged in Roake's petition are legally insufficient to warrant a full hearing. *See Halvorson v. Dahl*, 89 Wn.2d 673, 674, 574 P.2d 1190 (1978) ("a challenge to the *legal sufficiency* of the plaintiff's allegations must be denied unless no state of facts which plaintiff could prove, consistent with the complaint, would entitle the plaintiff to relief on the claim" (emphasis added)). The lead opinion's decision will cause confusion if it does not discuss the standard under which courts are to review CR 12(c) dismissals of SAPO petitions.

---

[1] "After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." CR 12(c).

2

*Roake v. Delman*, No. 93456-8 (González, J., concurring in dissent)

Standard of Review

We generally review CR 12(c) dismissals de novo. *P.E. Sys., LLC v. CPI Corp.*, 176 Wn.2d 198, 203, 289 P.3d 638 (2012). The court is empowered to depart from the general rules of civil proceedings because SAPO proceedings are "special proceedings," but only to the extent SAPO proceedings are inconsistent with the Civil Rules. CR 81(a) ("Except where inconsistent with rules or statutes applicable to special proceedings, these rules shall govern all civil proceedings.").[2] Without more clarity, the lead opinion runs the risk of suggesting that this ruling affects civil proceedings outside the confines of SAPO petitions.

"We treat a CR 12(c) motion . . . identically to a CR 12(b)(6) motion." *P.E. Sys.*, 176 Wn.2d at 203. Dismissal under either subsection is "appropriate only when it appears beyond doubt" that the plaintiff cannot prove any set of facts that "would justify recovery." *San Juan County v. No New Gas Tax*, 160 Wn.2d 141, 164, 157 P.3d 831 (2007); *Gorman v. Garlock, Inc.*, 155 Wn.2d 198, 215, 118 P.3d 311 (2005). We presume that the plaintiff's factual allegations are true and draw all reasonable inferences from the factual allegations in the plaintiff's favor. *Trujillo v. Nw. Tr. Servs., Inc.*, 183 Wn.2d 820, 830, 355 P.3d 1100 (2015). We may also consider hypothetical facts not included in the record. *FutureSelect*

---

[2] Delman interprets CR 81 to say "civil rules do not apply to special proceedings," Resp't's Answer to Amicus Curiae Br. at 18, but CR 81(a) explicitly says that the statute must be inconsistent with the Civil Rules that would normally apply.

3

*Roake v. Delman*, No. 93456-8 (González, J., concurring in dissent)

*Portfolio Mgmt., Inc. v. Tremont Grp. Holdings, Inc.*, 180 Wn.2d 954, 962, 331 P.3d 29 (2014). Thus, Roake's statement that she would encounter Delman on campus and that she did not know what he was capable of should carry great weight.[3]

However, the lead opinion's deference to the denial order likely means it is applying an abuse of discretion standard. Even though this action comes to us on a motion to dismiss, the lead opinion does not treat Roake's factual allegations as true because, presumably under CR 81(a), it roots the motion to dismiss in the SAPO act. Ch. 7.90 RCW. "If a respondent alleges a meritorious defense to the sufficiency of a temporary SAPO, under the statute he or she may petition the court to reopen the order under RCW 7.90.130(2)(e) . . . . Delman effectively did that by filing the motion to dismiss." Lead opinion at 9. I understand this to mean that the "motion to dismiss" was effectively mislabeled, but that it amounted to Delman making an RCW 7.90.130(2)(e) challenge to the temporary order's validity. I disagree with this approach, but if the lead opinion is going to adopt it, the "motion to dismiss" must be consistent with the requirements of RCW 7.90.130(2)(e). *Id.*

---

[3] It is unlikely that the lead opinion intends to heighten the CR 12(c) standard in SAPO petitions to require allegations that are plausible. *Compare Ashcroft v. Iqbal*, 556 U.S. 662, 678-79, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) ("the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions . . .[;] only a complaint that states a plausible claim for relief survives a motion to dismiss") *with McCurry v. Chevy Chase Bank, FSB*, 169 Wn.2d 96, 101-02, 233 P.3d 861 (2010) (explicitly rejecting to heighten the standard for motions to dismiss to plausibility).

4

"Motion To Dismiss" and RCW 7.90.130(2)(e)

Even if the lead opinion is saying the "motion to dismiss" was actually an RCW 7.90.130(2)(e) motion to "reopen the order" that the trial court granted, the denial order was an abuse of discretion. An abuse of discretion is found when a decision is based on untenable reasons, including relying on an incorrect standard. *Rodriguez*, 188 Wn.2d at 598 (citing *In re Marriage of Littlefield*, 133 Wn.2d 39, 47, 940 P.2d 1362 (1997)). The language of RCW 7.90.130(2)(e) supports the conclusion that the denial order was premature; therefore, Roake is entitled to a full hearing if a temporary order is reopened.

We review questions of statutory interpretation de novo to give effect to the legislature's intentions. *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9-10, 43 P.3d 4 (2002). When possible, we derive legislative intent solely from the plain language enacted by the legislature, considering the text of the provision itself, the context of the statute in which the provision is found, related provisions, and the statutory scheme as a whole. *Id.*; *State v. Ervin*, 169 Wn.2d 815, 820, 239 P.3d 354 (2010).

A fair reading of the RCW 7.90.130(2)(e) shows that it provides only an opportunity to *reopen a temporary order*. RCW 7.90.130(2)(e) explains:

> (2) A sexual assault protection order shall further state the following:
> . . . .
> (e) For ex parte temporary sexual assault protection orders, that the respondent may petition the court, to reopen the order if he or she did not

receive actual prior notice of the hearing and if the respondent alleges that he or she had a meritorious defense to the order or that the order or its remedy is not authorized by this chapter.

Thus, to reopen an order, the respondent needs to show both failure to "receive actual prior notice of the hearing" *and* a "meritorious defense." RCW 7.90.130(2)(e). The phrase "meritorious defense" does not permit dismissal of the temporary order; it relates to *vacation* of the temporary order so the respondent can participate in a hearing for a temporary order. "Meritorious defense" is a term of art used in the specific context of vacating default orders and judgments. *See* 14 WASHINGTON PRACTICE, CIVIL PROCEDURE § 9:26 (2d ed. 2009) ("Factors considered by court—Meritorious defense"). And the phrase "reopen the order" also suggests vacating the temporary protection order for further proceedings. *See* CR 59(g) (reopening judgment); *see also* BLACK'S LAW DICTIONARY 1490 (10th ed. 2014) ("reopen").

The Trial Court Abused its Discretion

In this case, a superior court commissioner issued a temporary SAPO restricting Delman from contacting Roake. Delman claims he did not contest the SAPO because he did not receive notice. *See* Br. of Resp't at 2-3. He moved to reopen the temporary order and, at a hearing on the motion, argued that the temporary order was invalid because there was no discussion of "fear" at the ex parte hearing. Report of Proceedings (Feb. 20, 2015) at 55. While the lead

opinion holds that Delman had a meritorious defense—legal insufficiency—and the case should be dismissed on that basis, at most this provision permits vacating the temporary order to provide Delman with an opportunity "to file a general appearance and testify," RCW 7.90.110(2), before the court may impose a temporary order.

Roake never had an opportunity to argue her allegations of fear were true at a hearing on the temporary order. And, even if a trial judge determines a temporary order is not necessary without "reach[ing] or resolv[ing] any issues required for issuance of a final order," lead opinion at 11, it is still necessary to provide a hearing on the final order. Somehow, the lead opinion implies, this "meritorious defense" to default judgment made the temporary order a prerequisite of the final order. *Id.* at 9. Again, that would be highly unusual—that requirement is found nowhere in the SAPO act. The requirements for a final order say nothing about the petitioner's fear of a respondent. RCW 7.90.090, .120.

In light of the fact that the lead opinion endorses the trial court's action, it should also consider RCW 7.90.170(1), which actually explains when a court can "terminate or modify the terms of an existing sexual assault protection order." The trial court found that Roake did not establish "reasonable fear of future dangerous acts." CP at 98. In Delman's motion to dismiss, he argued he will no longer interact with Roake on campus. *See id.* at 43 ("Delman is no longer a UW student,

*Roake v. Delman*, No. 93456-8 (González, J., concurring in dissent)

[and] is enrolled in a college outside the State of Washington."). While he also

argued that 10 months had passed since the alleged sexual assault and that a SAPO

would damage his reputation, *id.* at 51, his relocation is the sole ground that gave

the trial court cause to terminate the SAPO under chapter 7.90 RCW. *See*

*generally* RCW 7.90.170(2)(b) (an order can be terminated "if the respondent

proves by a preponderance of the evidence . . . [he or she] is not likely to engage in

or attempt to engage in physical or nonphysical contact with the persons protected

by the protection order").[4] Nonetheless, without the required hearing on the

motion under RCW 7.90.170(3) and a hearing on the final order, the denial order

was premature and thus an abuse of discretion.

Finally, the lead opinion says that "[i]n a different situation where a

respondent disputes the claim of sexual assault, the trial court will conduct a

further fact finding hearing and resolve the issue based on the testimony or

evidence submitted." Lead opinion at 11. It should be noted, however, that the

lead opinion does not expressly raise the dismissal standard to require *plausible*

fearfulness in the petition, and all evidence of legislative intent in the SAPO act is

---

[4] This language was added by the legislature after the briefs were filed in this case, and it became effective July 23, 2017. LAWS OF 2017, ch. 233, § 3. The legislature included it to clarify how protection orders can be modified or terminated. Notably, to modify or terminate an order, "[t]he petitioner bears no burden of proving that he or she has a current reasonable fear of harm by the respondent." *Id.* The requirement that the petition "be accompanied by an affidavit" with statements or actions that gave "rise to a reasonable fear," RCW 7.90.020(1), should be considered in light of this amendment.

8

*Roake v. Delman*, No. 93456-8 (González, J., concurring in dissent)

to the contrary. *See, e.g.*, RCW 7.90.005 ("Sexual assault inflicts humiliation, degradation, and terror on victims.").

The lead opinion determined the trial court did not abuse its discretion by issuing a denial order dismissing Roake's petition. I agree with the dissent that Roake's allegations were legally sufficient. Roake should have had an opportunity to test the veracity of her allegations in a full hearing. I concur in dissent.

González, J.